Filed 12/6/13  In re Brandon F. CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re BRANDON F., a Person Coming Under the Juvenile Court Law. | B241282<br>(Los Angeles County<br>Super. Ct. No. NJ23574) |
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>　　　v.<br><br>BRANDON F.,<br><br>　　　Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County.  John C. Lawson II, Judge, Robert J. Totten, Juvenile Court Referee.  Affirmed.

Torres & Torres and Tonja R. Torres, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Steven D. Matthews and Analee J. Brodie, Deputy Attorneys General, for Plaintiff and Respondent.

\* \* \* \* \* \*

The minor, Brandon F. (appellant) appeals from an order declaring him to be a ward of the court pursuant to Welfare and Institutions Code section 602, and committing him to the California Department of Corrections and Rehabilitation, Division of Juvenile Justice (DJJ) for a maximum confinement period of 43 years eight months, after a finding that he committed attempted murder (Pen. Code, §§ 187, subd. (a); 664,[1] count 15), seven counts of second degree robbery (§ 211, counts 1, 3, 7, 9, 11, 13, and 14), and seven counts of false imprisonment (§ 236, counts 2, 4, 5, 6, 8, 10, and 12). Appellant contends that (1) there is insufficient evidence to support the juvenile court's finding that he committed attempted murder, (2) the juvenile court relied on a legally incorrect theory to find him guilty of attempted murder, and (3) the four false imprisonment sentences should have been stayed pursuant to section 654 and the juvenile court erred in imposing concurrent sentences on those counts.

We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### *Prosecution Case*

On June 10, 2008, the Los Angeles County District Attorney filed a Welfare and Institutions Code section 602 petition alleging that on or about April 11, 2008, 14-year-old appellant committed petty theft (§ 484, subd. (a)) from a 99¢ Only Store in Long Beach. The juvenile court sustained the petition, declared appellant a ward of the court, and placed him home on probation.

On August 20, 2010, the Los Angeles County District Attorney filed a second Welfare and Institutions Code section 602 petition alleging that on or about October 19, 2008, 14-year-old appellant committed 15 counts of felony criminal offenses. The following evidence was adduced at an adjudication hearing on March 19, March 20 and April 9, 2012.

---

[1]    All further statutory references are to the Penal Code unless otherwise indicated.

2

### 1.    99¢ Only Store–South Fairfax Avenue, Los Angeles

On October 19, 2008, at approximately 9:00 p.m., 99¢ Only Store employee David Sanchez had finished sweeping and mopping the floors when appellant and Christian Traylor[2] entered the store.  Appellant put a gun to Sanchez's side and Traylor said "Don't move.  This is a robbery."  Traylor took Sanchez to a store room at the back of the store.  Traylor ordered Sanchez to lie down on the floor and put a box over his head.

Ian Riley was restocking the clothing aisle when he turned around and saw appellant pointing a gun at him.  Riley told appellant, "Hey, man, we have cameras watching you, I don't know if you want to do this or not."  Appellant told Riley to go to the store room.  When Riley entered the store room, Sanchez was lying on the floor.  Traylor ordered Riley to lie down and a box was placed over Riley's head.

Lerey Llamas, the assistant manager of the 99¢ Only Store, was in the back office assisting cashier Geda Kelouwok closing out her register.  Llamas heard a loud noise and opened the office door.  Appellant pointed a gun at her and said "Bitch, I want you to open the safe."  Llamas and Kelouwok walked to the safe by the main entrance of the store as appellant kept the gun pointed at them.  Llamas opened the safe and appellant removed three bags of money.  Appellant moved some boxes that covered a larger safe and told Llamas, "Open the big safe, you bitch."  Appellant removed boxes of coins and some cash from the larger safe.  Appellant struck Llamas approximately three times on the shoulder with the gun and then ordered her and Kelouwok back to the office.  Appellant found the safe balance sheet and discovered the amount listed was more than he had taken from the safes.  Llamas told him she did not know where the additional money was because it was her first day at that store.  Appellant noticed the security camera in the office and asked for the video.  Llamas did not have access to the video and appellant took a modem that was attached to all the cameras.  Appellant ordered Llamas

---

2    Christian Traylor is not a party to this appeal.

3

to empty her pockets. He took her identification, car keys, cell phone, $20, and the store keys. Appellant also took Kelouwok's cell phone.

Teresa Ouendo was working in one of the aisles at the store when Traylor grabbed her by the back of the head and pushed her towards the shelves. He forced her head down and held a gun to her. Traylor took her to the break room and threw her to the floor. He put his foot against her chin and she found it difficult to breathe. Traylor took Ouendo's money and cell phone.

Angelica Lopez came out of the 99¢ Only Store bathroom and saw Traylor holding Ouendo by the head. Lopez screamed for the store manager. Appellant appeared and ordered Lopez into the back office. Appellant threatened Lopez with the gun and took her cell phone.

Traylor went to the back office holding Ouendo at gunpoint and told appellant they had to leave. Traylor hit Ouendo and threw her on the floor. Appellant and Traylor walked to the back of the store and left the building.

### 2. John's Supermarket–Santa Monica Boulevard, Los Angeles

John's Supermarket (market) was located approximately five miles from the 99¢ Only Store that appellant and Traylor robbed around 9:00 p.m. on October 19, 2008. At approximately 11:00 p.m., Christopher Trujillo, the manager in charge of closing, saw appellant and Traylor in the market. Traylor was drinking a carton of orange juice and Trujillo confirmed that Traylor had paid for it. Trujillo directed cashiers Garik Atabekyn and Alfredo Barbosa to close their registers and count the money in a booth by the front of the market. As Barbosa approached the booth, Traylor put a gun to his head and demanded the money. Barbosa handed over the money and Traylor ordered him to get down behind the desk. Atabekyn was counting the money from his register when he heard an unfamiliar voice. He turned and saw Traylor pointing a gun at him. Traylor told him to get on the floor beside Barbosa. Traylor took the money from Atabekyn and left the booth.

4

Arthur Khoboyian was working at a cash register when appellant and Traylor attempted to purchase some juice and candy. They said they did not have enough money and Khoboyian called Trujillo to cancel the purchase. Traylor pointed a gun at Khoboyian and ordered him to the floor. Appellant had his hand under his shirt and stood behind Khoboyian. Khoboyian stayed on the floor when appellant chased away another market employee.

Traylor came up behind Trujillo and put a gun to his right side and said, "Relax, calm down." Traylor and Trujillo fell to the floor and Trujillo tried to throw away his keys. Traylor put the gun to Trujillo's head and took the keys. Appellant was standing by the service deli approximately 35 feet away. Traylor ordered Trujillo to go to the booth and open the safe. Atabekyn and Barbosa were in the booth and Trujillo told them to leave. Traylor grabbed money from Atabekyn and Barbosa as they exited the booth. Trujillo pressed a silent alarm located in the booth while Traylor was distracted. Traylor yelled at appellant, "Hurry up, let's get out of here, he is pushing the alarm."

Atabekyn saw Trujillo activate the silent alarm and appellant and Traylor ran out of the market. Atabekyn followed them outside, got in his car and followed them as they ran across the parking lot. Appellant got into a silver Chrysler PT Cruiser. Traylor walked back towards Atabekyn's car and pointed his gun at him. Atabekyn backed up and Traylor got in the silver car. Atabekyn followed the silver car onto the freeway. He continued to follow the silver car at a distance of two or three car lengths. Traylor leaned out of the passenger window and shot at Atabekyn on at least two occasions. Atabekyn slowed down but continued to follow the silver car until it exited the freeway. He exited at the next offramp and talked to the police.

### 3. Investigation and Arrest

Los Angeles Police Department Detective David Vinton investigated both robberies. The victims described the robbers as young African-American males. One was approximately 18 to 20 years of age, six feet two inches to six feet four inches tall and weighed 180 to 200 pounds. The other was 14 or 15 years of age, five feet four to

5

five feet six inches tall and weighed approximately 160 pounds. The DNA profile taken from the orange juice container at the market matched Traylor's profile and he was arrested. Appellant's brother had previously been arrested with Traylor but his physical appearance did not match the video images from the 99¢ Only Store or the witnesses' descriptions of the second robber. Appellant's booking information following his arrest in April 2008 for petty theft showed that appellant was five feet four to five feet five inches tall and weighed approximately 150 pounds at that time.[3] Detective Vinton obtained appellant's April 2008 booking photograph and included it in a photographic lineup shown to victims of the October 19, 2008 robberies. Llamas, Lopez, and Sanchez identified appellant as one of the two individuals that committed the 99¢ Only Store crimes.

Once in custody, Detective Vinton advised appellant of his *Miranda* rights.[4] Appellant knowingly waived his rights and agreed to be interviewed. He initially denied knowing Traylor and denied involvement in the crimes. Appellant then admitted his participation in the crimes but claimed that Traylor "did everything." According to appellant, he smoked marijuana that night and was "high." He could not remember all the details. Traylor gave him a handgun before they went into the 99¢ Only Store. Appellant said he went into the store with Traylor and then he "pulled out the gun and asked for the money." Detective Vinton showed appellant photographs from the security camera at the 99¢ Only Store. Appellant identified himself in the photographs and said "it was me" "robbing" the store. He admitted pointing a gun at the heads of the robbery victims and ordering a woman to give him money from a safe. He said he stole bills and coins and also a cell phone from one woman.

---

[3]  Appellant was about six feet one inch tall and weighed approximately 180 pounds at the time of his arrest in August 2010. Appellant said "he grew quite a bit."

[4]  See *Miranda v. Arizona* (1966) 384 U.S. 436, 444–445.

Appellant said he left the gun in the car during the market robbery because "two robberies in one night" did not "add up" to him. During the market robbery he kept his hand under his shirt and acted as if he had a gun. After leaving the market, Traylor approached the market employee who was attempting to follow them and appellant heard a single gunshot. Later, during the car chase on the freeway, appellant heard two or three gunshots fired from Traylor's front passenger window.

*Defense Case*

Dr. Jay Schlanger, an optometrist, reviewed appellant's medical records and made a pair of eyeglasses from a reverse prescription to illustrate appellant's uncorrected vision at the time of the robberies. Dr. Schlanger testified that appellant could see objects and people moving but would not be able to distinguish them until they were three to four inches from his face. He opined that a person with appellant's uncorrected visual acuity could enter a brightly-lit store, grab individuals, put a gun to their heads, take their property and direct them around the store.

## DISCUSSION

### I.  Substantial Evidence Supports Appellant's Conviction for Attempted Murder

Appellant contends the evidence was insufficient to sustain his conviction for attempted murder. He argues the evidence was insufficient to show that Traylor intended to kill Atabekyn.

"Attempted murder requires the specific intent to kill and the commission of a direct but ineffectual act toward accomplishing the intended killing." (*People v. Lee* (2003) 31 Cal.4th 613, 623.) "'There is rarely direct evidence of a defendant's intent. Such intent must usually be derived from all the circumstances of the attempt, including the defendant's actions. [Citation.]'" (*People v. Smith* (2005) 37 Cal.4th 733, 741.) Although reasonable minds may differ as to whether a defendant had the intent to kill, "[o]ur role is to determine the legal sufficiency of the found facts and not to second guess the reasoning or wisdom of the fact finder." (*People v. Lashley* (1991) 1 Cal.App.4th 938, 946.)

7

The same standard governs review of the sufficiency of evidence in juvenile cases and adult criminal cases. (*In re Christopher F.* (2011) 194 Cal.App.4th 462, 471, fn. 6; *In re Matthew A.* (2008) 165 Cal.App.4th 537, 540.) We review the entire record in the light most favorable to the juvenile court's findings "to determine whether any rational trier of fact could have found the essential elements of the crime or special circumstances beyond a reasonable doubt." (*People v. Zamudio* (2008) 43 Cal.4th 327, 357, italics omitted; *In re Christopher F., supra,* at p. 471, fn. 6.) "The record must disclose substantial evidence to support the [findings]—i.e., evidence that is reasonable, credible, and of solid value . . . ." (*Zamudio, supra,* at p. 357.) Even if we conclude that a reasonable trier of fact could reconcile the circumstances with a contrary finding, we affirm the court's order unless it appears """"that upon no hypothesis whatever is there sufficient substantial evidence to support"" the [court's findings]." (*Ibid.*) "The same standard applies when the conviction rests primarily on circumstantial evidence." (*People v. Kraft* (2000) 23 Cal.4th 978, 1053.)

After reviewing the entire record, we conclude that there is sufficient evidence of Traylor's specific intent to kill Atabekyn. Appellant argues an intent to shoot is not equivalent to specific intent to kill and "if Traylor had intended to kill, he necessarily would have shot directly at Atabekyn, rather than over his car." We are not persuaded.

Traylor had a motive to kill Atabekyn because Atabekyn was one of the victims of the market robbery. A motive to kill is particularly reasonable to infer when the victim is a witness. (See *People v. Jenkins* (2000) 22 Cal.4th 900, 931.) In *Jenkins*, the victim of the robbery supplied the police with a license number of the automobile in which the two men who had robbed him were driving, and that vehicle was traced to defendant. Defendant declared his innocence to the investigating detective. The victim positively identified defendant, both to the investigating detective and at the preliminary hearing, as one of the two assailants. Defendant was convicted of first degree murder of and conspiracy to murder the investigating detective, and attempted murder of the witness. (*Ibid.*)

Atabekyn exited the market and got into his car because he wanted to follow Traylor and appellant. Traylor first walked towards Atabekyn's car and pointed the gun at him. Appellant told Detective Vinton he heard a single gunshot when Traylor approached Atabekyn's car. Atabekyn reversed his car, thwarting Traylor who then jumped into the PT Cruiser with appellant and left. Atabekyn resumed following Traylor through the parking lot and onto the freeway. Atabekyn's actions significantly increased the likelihood that Traylor would be apprehended. Atabekyn could provide police with a description of the robbers, their getaway vehicle, and their location. Traylor proceeded to lean out the front passenger window of the PT Cruiser on at least two occasions and fire towards Atabekyn from a distance of approximately three car lengths. (*People v. Mayfield* (1997) 14 Cal.4th 668, 768–769 [intent to kill can be inferred from a desire to eliminate pursuit and avoid arrest].)

Appellant focuses on Atabekyn's testimony that the gun appeared to be pointed towards his car but "higher." He contends Traylor "purposely aimed his gun above the car Atabekyn was driving." There is no evidence in the record compelling such a conclusion. Atabekyn did not testify that Traylor fired the gun into the air which would support appellant's contention. To the contrary, Atabekyn testified that when he stopped his car he checked to see if any bullets had hit the car. The fact that Atabekyn escaped death because of Traylor's "poor marksmanship [does not] necessarily establish a less culpable state of mind." (*People v. Lashley, supra,* 1 Cal.App.4th at p. 945.)

## II. The Juvenile Court Did Not Rely on an Incorrect Legal Theory to Find Appellant Committed Attempted Murder

Appellant contends his attempted murder conviction should be reversed because the juvenile court relied on an incorrect legal theory to find him guilty. He contends the court found him guilty of attempted felony murder which is not a legally cognizable crime.

At the juvenile court's request, the prosecution addressed defense counsel's argument that the prosecution had failed to prove appellant shared Traylor's specific

9

intent to kill. The prosecution stated, "the felony murder rule applies in this case." The prosecution argued that appellant knew that when he and Traylor entered the market with guns, if there was a confrontation with someone who tried to prevent the robbery, "the reasonable outcome or what is going to come out of that situation . . . is a possible shooting and a possible killing." He argued that appellant was culpable "under a theory of accomplice liability" because he knowingly entered the market to back up Traylor who was carrying a firearm, then left with Traylor in a getaway vehicle while Traylor was shooting at Atabekyn. The juvenile court found the attempted murder allegation to have been proven and stated, "I agree with the argument that was made by [the prosecution]."

Appellant contends that the juvenile court's comment indicates it relied on the felony murder rule. We reject this contention.

As the Supreme Court noted in *People v. Prettyman* (1996) 14 Cal.4th 248, the "'natural and probable consequences' doctrine [has been applied] in situations where a defendant assisted in the commission of an armed robbery, during which a confederate assaulted or tried to kill one of the robbery victims. In those cases, courts upheld jury verdicts convicting the defendant of assault and/or attempted murder, on the ground that the [trier of fact] could reasonably conclude that the crime was a natural and probable consequence of the robbery aided by the defendant. [Citations.]" (*Id.* at pp. 262–263.) That was precisely the situation here and the prosecution argued that appellant need not have personally fired the weapon to be liable for attempted murder.

While the prosecution did state the felony murder rule applied in this case, his argument, however, focused on appellant's liability as an aider and abettor. The prosecution argued that appellant acted with knowledge of Traylor's criminal purpose at the market. Even though appellant left his firearm in the car, the prosecution argued that he acted as if he had a weapon under his clothing and knew he was "there to back up his accomplice," who had a firearm. He concluded his argument by stating that appellant was "responsible under a theory of accomplice liability."

10

We do not read the juvenile court's comment that it was in agreement "with the argument that was made" by the prosecution to undermine the validity of the judgment. The juvenile court did not state the felony murder rule proved appellant committed attempted murder. The court's agreement was with the prosecution's analysis and not his misstatement of the law. The "felony-murder rule is inapplicable to attempted murder as well as aiding and abetting an attempted murder." (*People v. Patterson* (1989) 209 Cal.App.3d 610, 614.) The juvenile court is presumed to know the law and apply it correctly. (*People v. Superior Court* (*Du*) (1992) 5 Cal.App.4th 822, 836.)

As discussed above in part I, the juvenile court reasonably found that there was substantial evidence that appellant's accomplice intended to kill Atabekyn. The juvenile court did not rely on an incorrect legal theory, and there are no grounds for reversal.

## III.    Appellant's Sentence Did Not Violate Section 654

Appellant contends the juvenile court erred when it failed to stay execution of sentence on four counts of false imprisonment because the false imprisonments were part of an indivisible course of conduct punished by the terms imposed for the robberies of those same victims.

Section 654 bars multiple punishments where "there is a course of conduct that violates more than one statute but nevertheless constitutes an indivisible transaction." (*People v. Hairston* (2009) 174 Cal.App.4th 231, 240.) If a defendant commits more than one offense, but "'all the offenses were incident to one objective, the defendant may be punished for any one of such offenses, but not for more than one.' (*People v. Perez* (1979) 23 Cal.3d 545, 551.)" (*People v. Wynn* (2010) 184 Cal.App.4th 1210, 1214–1215, italics omitted.) The statute does not apply to bar multiple punishments where the defendant held multiple objectives or intents. (*People v. Coleman* (1989) 48 Cal.3d 112, 162.) "'Whether a course of conduct is divisible and therefore gives rise to more than one act within the meaning of section 654 depends on the "intent and objective" of the actor.'" (*People v. Hairston, supra,* at p. 240, quoting *Neal v. State of California* (1960) 55 Cal.2d 11, 19.) The amount of time that elapses between criminal acts, "although not

11

determinative on the question of whether there was a single objective, is a relevant consideration." (*People v. Martin* (2005) 133 Cal.App.4th 776, 781.) Where the offenses are separated in time, affording the defendant an "'opportunity to reflect and to renew his or her intent before committing'" the next offense, the trial court may conclude that the defendant had multiple objectives and committed more than one criminal act meriting multiple punishments. (*People v. Andra* (2007) 156 Cal.App.4th 638, 640.)

We apply a substantial evidence standard of review. "'The determination of whether there was more than one objective is a factual determination, which will not be reversed on appeal unless unsupported by the evidence presented at trial.' [Citations.] '[T]he law gives the trial court broad latitude in making this determination.' [Citation.]" (*People v. Wynn, supra,* 184 Cal.App.4th at p. 1215.)

The four false imprisonment sentences challenged by appellant were set forth in counts 2, 4, 8, and 10. The victims of those crimes, Llamas (count 2), Kelouwok (count 4), Lopez (count 8), and Ouendo (count 10) were all robbery victims at the 99¢ Only Store. The evidence shows the following sequence of events: Llamas and Kelouwok were taken at gunpoint from the back office to the front of the store where the safes were located. Llamas complied with appellant's order and appellant obtained money from each safe. Appellant struck Llamas several times on the shoulders with his gun and then forced Llamas and Kelouwok to return to the back office. Appellant took a cell phone from Kelouwok, and identification, cash, keys, and a cell phone from Llamas. Appellant confronted Lopez as she came out of the bathroom. She was ordered to the back office where appellant threatened her with his gun before taking her cell phone. Traylor confronted Ouendo while she was working on the store floor. He held a gun to her head and forced her down. Traylor then took Ouendo to the break room where he proceeded to throw her to the floor and put his foot against her head before he took her money and cell phone.

We note that the evidence shows the individual robberies of Llamas, Kelouwok, Lopez, and Ouendo were unrelated to any attempt to steal from the store's safes and in

12

fact occurred after appellant had obtained the money from the safes at the front of the store. Appellant contends that the "single objective" of the crimes was to steal "money *or property*" and was part of an "indivisible and uninterrupted course of conduct." While appellant's argument addresses why property was taken from the four named individuals it fails to explain why their false imprisonment was necessary to achieve that objective. (See *People v. Bamba* (1997) 58 Cal.App.4th 1113, 1123 ["the essential element of false imprisonment is restraint of the person. Any exercise of express or implied force which compels another person to remain where he does not wish to remain, or to go where he does not wish to go, is false imprisonment"].) There was ample opportunity for appellant and Traylor to rob each of the victims without moving them around the store. Llamas was taken from the front of the store to the back office. Kelouwok was taken from the back office to the front of the store and then taken to the back office before being robbed. Lopez and Ouendo were robbed only after they were physically taken to the back office and the break room, respectively. Nothing in the record indicates, nor does appellant contend, that appellant's intent to steal from these four victims was dependent on them being taken to various locations around the store.

Under the circumstances presented here, we conclude there is substantial evidence to support the juvenile court's finding that the false imprisonments were additional criminal acts distinct from the robberies. Thus, section 654 does not bar separate punishment.

**DISPOSITION**

The order is affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J. *

FERNS

We concur:


_____, P. J.

BOREN


_____, J.

ASHMANN-GERST

---

\*      Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

14